United States Bankruptcy Court
Northern District of Ohio
Eastern Division at Canton

In re: * Case No. 16-60064
 *
Michael Todarello * Chapter 13
 *
 * Judge Russ Kendig
 *
Debtors *
 *
 * **APPLICATION FOR ATTORNEY'S FEES**
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

To the Honorable Russ Kendig, Bankruptcy Judge:

The Application of James F. Hausen respectfully represents:

1. Applicant is the attorney for the debtor(s), Michael Todarello, and makes this application for an allowance of compensation for professional services rendered.

2. All services for which compensation is requested were performed on behalf of Michael Todarello and not on behalf of any committee, creditor or other person.

3. Applicant is requesting to be paid the no-look fees under Administrative Order 15-02

4. The Chapter 13 Trustee, Toby L. Rosen, has notified the applicant she will confirm the case but will only pay attorney fees if granted by a fee application.

5. The Trustee's reasoning is applicant is in an interstate legal partnership and is concerned about fee sharing for referrals.

6. The trustee is correct that the applicant is in a partnership that is based out of Chicago, Illinois named Allen Chern Law, LLC. However, applicant fails to see how this is fee sharing.

7. 11 USC 504 states:

   **a)** Except as provided in subsection (b) of this section, a person receiving compensation or reimbursement under section 503(b)(2) or 503(b)(4) of this title may not share or agree to share—
   **(1)** any such compensation or reimbursement with another person; or
   **(2)** any compensation or reimbursement received by another person under such sections.
   **(b) (1)**
   A member, partner, or regular associate in a professional association, corporation, or partnership may share compensation or reimbursement received under section 503(b)(2) or 503(b)(4) of this title with another member, partner, or regular associate in such association, corporation, or partnership, and may share in any compensation or reimbursement received under such sections by another member, partner, or regular associate in such association, corporation, or partnership.

1

8. Applicant has attached a copy of the Partnership Agreement. This Partnership Agreement addresses almost every facet of applicant's relationship with the firm. Applicant receives fees from every case he files and additionally applicant receives a pro-rata share of a percent of the revenue derived from all Ohio activities related of the representation of Ohio clients.

WHEREFORE, Applicant requests that an order be entered allowing attorney fees to be paid under Administrative Order 15-02 in every case Applicant files under Allen Chern LLC

/s/ James F. Hausen
James F. Hausen #0073694
Attorney for debtor(s)
215 E. Waterloo Rd, Suite 17
Akron, OH 44319
Voice: 234-678-0626
Fax: 234-678-0638

## NOTICE OF APPLICATION

**The Debtor has filed an Application for Fees in this bankruptcy case. <u>Your rights may be affected</u>. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to grant the relief requested, or if you want the court to consider your views, then on or before <u>June 1, 2016</u>, you or your attorney must:

File with the court a written request for hearing and a written response setting forth the specific grounds for objection at: Ralph Regula Federal Building and US Courthouse, United States Bankruptcy Court, 401 McKinley Ave SW, Canton, OH 44702

You may also mail a copy to: Toby L. Rosen, Chapter 13 Trustee, 400 W Tuscarawas St 4th Floor, Canton, OH 44702

And the debtor(s) attorney at: James F. Hausen, Attorney at Law, 215 E. Waterloo Rd, Suite 17, Akron, OH 44319

If you mail your request and response to the court for filing, you must mail it early enough so the court will receive it before the date stated above.

If you or your attorney does not take steps, the court may decide that you do not oppose the motion and may enter order grating the relief requested.

Date: <u>May 11, 2016</u>                                    /s/ James F. Hausen
                                                            James F. Hausen
                                                            Attorney for debtor(s)

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion and Notice were electronically transmitted on or about <u>May 11, 2016,</u> on the Court's CM/ECF system to the following who are listed on the Court's Electronic Mail Notice List:

2

Chapter 13 Trustee: Toby L. Rosen

I further certify that the following received notice by regular U.S. Mail at the specified address on the date first set forth above:

Michael Todarello
6002 Keller Rd
New Franklin, OH 44702

/s/ James F. Hausen
James F. Hausen #0073694
Attorney for debtor(s)

 ALLEN CHERN LAW

## Partnership Agreement

This Partnership Agreement (this "**Agreement**") is made by and between Jason Allen Law LLC, an Illinois limited liability company registered to do business in the State of Ohio as Allen Chern Law LLC ("**Firm**") and _____James Hausen_____ ("**Partner**", and, together with Firm, the "**Attorneys**") relating to the representation of consumers facing financial hardship (collectively, the "**Debtors**" or "**Clients**"). This Agreement shall govern the relationship between Firm and Partner on what is anticipated to be a series of legal matters to resolve Client's financial hardship and/or to protect Client's rights under various state and federal consumer protection statutes (each, a "**Case**"). Partner, upon execution of this Agreement, will be deemed to be serving as a non-equity, non-voting Partner/Member of the Firm, and agrees to serve as a Partner of the Firm as further described below. Partner shall perform Certain Responsibilities of Partner (as described in section 3 below) on each Case assigned to Partner in the Firm's case management database (the "**Database**"); provided, that Partner may, by providing written or electronic notice to Firm, decline representation on any Case where Partner reasonably believes it, he or she is prohibited from participating in such Case based on rules of professional or ethical conduct.

**1. Purpose of Firm.** Firm is engaged in the practice of representing consumers in a variety of debt relief services including chapter 7 and chapter 13 bankruptcy protection, alternatives to bankruptcy, as well as prosecuting consumer rights violations in both state and federal courts. Firm's goal is to assess the financial circumstances of the Client and to objectively communicate the benefits and disadvantages of each of several debt relief alternatives so as to allow an individual to make an educated and informed decision as to what alternative best serves his or her objectives.

**2. Responsibilities of Firm.** Firm shall be the initial point of contact for all new Client calls, and shall (i) schedule and confirm retention appointments, (ii) prepare intake forms, disclaimers and agreements for Clients to sign at a retention meeting, (iii) field all Client calls and creditor/opposing counsel calls, (iv) collect/process all Client payments, including fee payments and costs to be paid out of each Client's trust account. Client calls shall be forwarded to Partner in the event that any such Client requires state-specific legal advice, Client's inquiry requires speaking directly with Partner or Client otherwise indicates their need to speak with their attorney. Client calls not requiring state-specific legal advice, not otherwise requiring that Client speak with Partner, will be handled by a Firm legal assistant, staff Partner, attorney or other legal professional, unless Client otherwise specifically requests speaking directly with Partner.



Opposing counsel/creditor calls shall be forwarded to Partner in the event that the nature of the call necessitates direct communication with Partner or is in relation to a legal matter set on the court's calendar for which direct communication among counsel is necessitated. Firm may, at its discretion or as required under state laws and/or bar regulations, carry standard and customary malpractice insurance in respect of losses related to Client Cases in which Partner participates in representation. Firm shall pay fees due and owing per section 4 below on a monthly basis no later than thirty (30) days after the close of the prior calendar month. Firm shall provide Partner, together with each such payment, an accounting as to how fee distributions were calculated for the applicable month on a per Case basis. Firm and Partner shall each have discretion in (i) determining whether or not to accept or represent any Client, and (ii) determining how many other attorneys to associate with the Firm either as equity or non-equity Partners and to determine which attorneys shall serve in such capacities.

3. **Certain Responsibilities of Partner**.

   A) *Notice of Partnership/Affiliation, Conflicts*. Partner shall, after receiving authorization and approval from any required third parties shall take such reasonable steps as are necessary in Partner's reasonable judgment to afford notice to Other Firm's and Firm's Clients of Partner's dual affiliation. Partner authorizes Firm to disclose on Firm's letterhead, websites and advertising materials, Partner's affiliation with and address of any Other Firms to be represented to the public and to Client's as a physical address of Firm. Immediately upon being notified of an appointment with a potential Client, Partner will cross-check against any Other Firm's database to identify any conflicts of interest which might interfere with Partner's or Firm's representation of such Client and will immediately notify Firm of any such conflict. Furthermore, Partner will update each Other Firm's database to disclose the Firm's potential representation and avoid any future conflict. Finally, Partner shall notify Firm before initiating any partnership affiliation with any additional firms.

   B) *Availability for Consultations*. Partner will make him/herself available for new Client consultations for no less than six (6) hours per week on a minimum of two weekdays and will provide Firm with notice of such availability no less than ten (10) days in advance of such availability. Partner may provide office hours on weekends upon reasonable notice to the Firm. Partner may request, but not require, that Client travel to Partner's office for an in-person consultation. Partner may only require an in-person meeting if, in Partner's reasonable judgment, an in-person meeting is required to meet Partner's reponsibilities under the Rules of Professional Conduct or the U.S. Bankruptcy Code. Partner must make him/herself available for an in-office consult upon the request of the client.

C) *Work Product*.  Partner and Firm will share professional responsibility for all work product generated by Partner and the Firm, and Partner will prepare and/or review such work product in advance of it being delivered to Client, courts, opposing counsel or any other third party.  Work product, as described above, shall include, but not be limited to, bankruptcy petitions, schedules, chapter 13 plans, court pleadings, motions, and discovery requests.

D) *Appearances*.  Partner shall make him/herself available for all court appearances, whether in state or federal court, necessary for the proper defense/prosecution of a Client's Case.  Partner shall not engage co-counsel, including any Partner of Other Firm(s), to cover such appearances without the express written consent of Firm.

E) *Responsibility*.  Partner will, throughout the duration of each Case, regularly confer with Firm in making strategic and planning decisions.  Notwithstanding the foregoing, the Attorneys will have joint responsibility for representation of the Client in respect of each Case, and as such, each of the Attorneys will share in the preparation and presentation of each Case.  In addition, where possible, the Attorneys will attempt to make decisions by consensus about all important litigation matters involving a Client, with input from the applicable Client as appropriate.

F) *Payment of Fees*.  Partner shall not collect payments directly from a Client in advance of filing a Chapter 7 bankruptcy case with the court or not at all in a Chapter 13 case, except that Partner shall be permitted to collect initial retainer fees in cash, but only at the face-to-face consultation, and in such case Partner agrees to forward all such retainers to Firm headquarters no less than once per week via Federal Express, each such retainer being clearly labeled with the date and amount of each payment and Client name and I.D.

G) *Database*.  Partner agrees to utilize the Database as reasonably required from time to time by Firm.  To this end, (i) all Partner activities in respect of each Case will be entered into the Database, including, without limitation, details regarding all time and tasks spent by Partner in handling each Case and all court dates, (ii) Partner shall refrain from filing any documents which were not created and delivered through Firm's software and Database, (iii) Partner shall regularly provide updates within the Database as to availability, scheduling, court calls and other acitivites taken on the case and (iv) Partner shall create digital copies of all documents provided by Client and upload them into the database all documents gathered .

H) *Notices*.  Partner agrees to forward to Firm via email, fax, U.S. Mail/Registered Mail or upload to Firm's Database all correspondence received by Partner at his/her local address immediately upon receipt, specifically, and not by way of limitation any notice of hearing before the court in Partner's jurisdiction.  Partner shall deliver such correspondence at the same email address,



the same physical address, the same fax number and in the same manner required of Client's as specified on Firm's website or as provided to Partner by Firm from time to time. Further, Partner shall upload any correspondence from opposing counsel and creditors to Firm Database directly to the respective Client's record no less than twenty-four (24) hours from receipt.

  I) *Consultation*. Partner shall present to Client each of the documents provided to Partner by Firm and objectively present the debt relief alternatives as outlined in such materials. Subsequent to the initial consultation, Partner will make him/herself available to consult/advise client in relation to all matters related to Case, including but not limited to responding to creditor litigation, exploring alternative remedies and prosecuting/defending related claims. Additionally, Partner shall, on no less than a monthly basis, review the progress of Client's matter including the ongoing progress/feasibility of Client's elected debt resolution alternative.

  J) *Support Staff*. Although Firm shall endeavor to provide all support staff services necessary for the successful delivery of all work product up through the time the Client has paid all pre-petition fees and filing fees in full, Partner, at his/her discretion, may engage support staff at Partner's own expense to assist Partner in fulfilling Partner's obligations under this provision. If Partner engages support staff to assist Partner in fulfilling obligations under this provision, Partner shall take all steps necessary to protect the Client's attorney-client privileges and confidentiality in accordance with the Professional Rules of Conduct as dictated by Partner's local bar and properly supervise such support staff in accordance with the Rules of Professional Conduct.

  K) *Work after Payment in Full*. After Client has fulfilled all pre-petition payment obligations, Partner is primarily responsible for all work related to collecting documents, preparing and filing a bankruptcy petition and plan, fulfilling all trustee document requests, appearing at all hearings and all other work required by the court to successfully effectuate a discharge of debt under Chapter 7 or Chapter 13.

**4. Allocation of Fees**.

  A) *Earned Fee Allocations*. As fees are paid to Firm on account of Firm's and Partner's work on behalf of Firm and each Client, such Fees will be deposited either directly into Firm's operating account if earned when paid, or deposited into Firm's trust account and then later transferred from Firm's trust account to Firm's operating account in accordance with Client's retainer agreement and all rules of professional conduct applicable to the payment and application of Fees. ("**Earned Fees**"). At such time as any fees become Earned Fees, and after Firm has been reimbursed fully for all out of pocket expenses advanced on behalf of the applicable Client, in recognition of the sharing of responsibility in representing each Client,



the Attorneys have agreed that Partner shall, assuming Partner continues to represent a Client as a Partner of the Firm, receive the following amounts of profit on each Case, including as further specified under Exhibit A of this Agreement:

    (1) **For a Chapter 7 Bankruptcy**, Partner shall receive (a) twenty percent (20%) of all Earned Fees in the event that Partner conducts the initial consultation/compliance call, collects the due diligence documents, prepares the petition, reviews the final petition in person or via videoconference, as required by local rules, with Client, signs the petition, and the petition is filed with Partner as attorney of record, to be paid within 30 days of the end of the calendar month during which the petition is filed as evidenced by Partner entering the correct filing information within the Firm's Database, including the case number, Judge, Trustee and all section 341 meeting information, plus (b) thirteen percent (13%) of all Earned Fees in the Event that Partner attends the section 341 Meeting of Creditors and a Discharge Order is entered as evidenced by Partner entering the Discharge Order information into Firm's Database, to be paid within 30 days of the end of the calendar month during which the Discharge Order is entered by Partner in the Database; and

    (2) **For a Chapter 13 Bankruptcy**, Partner shall receive (a) one hundred percent (100%) of the Earned Fees distributed post-petition by the Chapter 13 trustee in the event that Partner conducts the initial consultation and retention, collects the due diligence documents, prepares the petition and plan, reviews the final petition in person or via videoconference, as required by local rules, with Client, signs the petition, and the petition is filed with Partner as attorney of record, to be paid within 30 days of the end of the calendar month during which the petition is filed as evidenced by Partner entering the correct filing information within the Firm's Database, including the case number, Judge, Trustee and all section 341 and 524 dates, plus (b) one hundred percent (100%) of all applicable Earned Fees granted by the Court pursuant to a supplemental fee application for additional post-petition services, provided Partner actively assisted, participated and appeared as required by the Firm in the performance of those additional services. Partner shall only receive such pro rata share of supplemental Earned Fees granted for services that are specifically attributable to Partner's hourly work on the matter, as reflected on the supplemental fee application, and shall not receive any share of Earned Fees attributable to the work of other Partners.

  B) *Other Fees.* Notwithstanding the above, if Client retains Firm under a separate retainer agreement to pursue further remedies related to debt and credit, but not contemplated under the standard chapter 7 or chapter 13 agreement, including, but not limited to adversary complaints to pursue loan servicing violations, objections



to claims, violations of state and federal consumer protection laws, whether prosecuted in state or federal district or bankruptcy court, Firm and Partner shall distribute Earned Fees (net of reimbursement for out-of-pocket expenses and distributions to other co-counsel, associates, and/or other non-equity Partners) such that Partner shall receive ten percent (10%) of Supplemental Earned Fees. In the event that more than one Partner fulfills obligations under 4.A) above, the ten percent of Supplemental Earned Fees referenced herein shall be treated as a pool of Earned Fees and distributed on a pro rata basis so that each Partner receives the same percentage of the pool as Partner received of the base Earned Fee. In the event of any ambiguity among the Attorneys regarding division of Earned Fees, all post petition fees will be distributed equally among the Firm and the Partner, respectively.

    C) *Supervising Partner.* This Agreement anticipates that certain Partners of the Firm ("**Associate Partners**") will be under the supervision of and will report to other Partners of the Firm ("**Supervising Partners**"). In the event that Partner is executing this Agreement as an Associate Partner, Associate Partner agrees that all Earned Fees on account of Associate Partners work shall be distributed directly to Supervising Partner. Supervising Partner and Associate Partner agree that Supervising Partner shall be solely responsible for distributing no less than twenty-five percent (25%) of such Earned Fees directly to Associate Partner. Associate Partner shall hold Firm harmless for any liability related to Supervising Partner's alleged failure to distribute Earned Fees to Associate Partner. Any disputes related to this provision and/or allocation shall be resolved in favor of the applicable Supervising Partner and Partner hereby waives all claims of any type against Firm for distribution of fees within such parameters. Disputes, if any, will be resolved by arbitration in Illinois under the rules of the American Arbitration Association pursuant to Section 14. The Attorneys agree and acknowledge that all fees described herein are subject to applicable state ethical rules and regulations regarding the application of fees relative to the amount of work a lawyer contributes to representation in a particular case, and as such, the fee schedule outlined above will be modified by Firm as reasonably determined necessary to comply with any such rule or regulation. The Firm reserves the sole right to deny Partnership to, terminate Partnership of, and reassign cases of any Associate Partner at any time. To the extent the Supervising Partner terminates an Associate Partner that is the attorney of record for a Client, Supervising Partner shall either personally substitute as attorney of record or otherwise provide an alternative Associate Partner to substitute as attorney of record in such matter. Supervising Partner agrees to properly supervise Associate Partner to the extent necessary to assure that Associate Partner fulfills all

responsibilities under this Agreement as if Supervising Partner was personally performing such obligations.

D) Firm will create a profit sharing pool equal to one percent (1%) of the profits generated from legal services provided to Clients retained in Partner's jurisdiction. The Firm will divide the profit pool among all Partners in the applicable jurisdiction based on the number of Cases handled by each Partner. The share of profits payable to Partner will be paid on or about February 15th for the prior year. This will compensate Partner for time spent on the administrative activities of the Firm not otherwise compensated above.

E) Partner agrees to open a bank account for the purpose of Firm depositing Partner's share of Earned Fees and profit sharing. All Earned Fees and/or reimbursements due to Partner shall be deposited into such account. No payments will be made to Partner in any other form. Partner agrees that such bank account shall be used in Partners personal name and not in the name of any Other Firm and that such account shall be used exclusively for deposits of Partner Fee distributions and shall not be used for any other purpose.

F) *Rainmaker Distributions*. In the event that Partner personally generates a Client for firm representation through Partner's own marketing or referral sources, Partner shall receive ten percent (10%) of Earned Fees when Client's case is filed with the court ("**Rainmaker Distribution**"). Such Rainmaker Distribution shall be paid to Partner whether or not Partner actively participates in Client's representation in the underlying bankruptcy matter based on the Partner's prior consultation with Client and direction to another Partner of Firm.

5. **Non-solicitation; Confidentiality.** Firm and Partner acknowledge that Firm has invested considerable and immeasurable expense in developing processes, forms, and enrollment processes, strategies, software and other intellectual property to most effectively and efficiently generate clients ("Proprietary Information"). The Proprietary Information includes confidential information related to consumers and the Clients. Partner acknowledges that the Proprietary Information constitutes confidential information that provides substantial economic value to Firm. Partner agrees that for the term of this Agreement, and for a period of eighteen (18) months subsequent to its termination, Partner shall not use the Proprietary Information to contact or solicit a current or past Client of Firm to offer or promote the services of any Other Firms. Partner agrees to maintain the confidentiality and not disclose or otherwise use the Proprietary Information, except in the provision of legal services in Client's Cases. Partner shall not copy, recreate, reverse engineer or otherwise use any of Firm's Proprietary Information in delivering legal services directly to consumers. Further, any Client referred to Partner by another Client of Firm is considered to be a referral to Firm and not to any Other Firm and each such referral shall be

recorded in Firm's Database and be treated as a Client or prospective Client of Firm. Further, Partner may not solicit Firm Clients via a directed or targeted marketing effort without the Firm's prior written authorization. Nothing herein shall prohibit the Partner from engaging in general advertising of legal services. Breach of Partner's obligations under any portion of this provision shall be considered a bad faith breach of this Agreement and be grounds for termination by Firm of this Agreement. Furthermore, in the event of any breach of this Section 5 by Partner, Partner shall forfeit all rights to current or future fees which may be due and owing by Firm, whether or not Earned Fees, and Firm shall have the right to enforce its rights under this provision utilizing all remedies hereunder and available under the law including injunctive relief.

**6.    Litigation Expenses**. Given the expected nature of the Cases and the availability of fee-shifting statutes, it is possible that the Attorneys will attempt to obtain an order from the applicable court requiring one or more defendants to pay litigation expenses and attorneys' fees. Similarly, if a Case is settled, the Attorneys will attempt to get the applicable defendant to pay such fees and expenses. In the event the amount of the attorneys' fees and expenses are disputed by any defendant or any other third party, then Firm will submit to the court the Attorneys' respective time in a consolidated fee application generated within its Database. No experts will be retained and no substantial cost will be incurred without the consent of Firm. Actual and permissible expenses paid by Partner solely in connection with a Case, if any, will be reimbursed from any money recovered from such Case before there is any division of fees as set forth in this Agreement. Partner agrees to track all time on litigation matters within the Firm's Database so that Firm may prepare fee applications. Any failure by Partner to track such time in the Firm's Database may result in Partner being disqualified from receiving fee distributions on such matter.

**7.    Publicity**. Partner shall not issue any press release or participate in any press conference related to a Case without, in each case, Firm's written or electronic consent (which consent may be granted or denied in Firm's sole discretion). All Attorneys will cooperate fully with all publicity and public education efforts generated by Firm.

**8.    Term**. Either Firm or Partner may terminate this Agreement at any time by providing 30 days' prior, written notice (a "Termination Notice") to the other Party; <u>provided</u>, that (i) Partner shall, notwithstanding any such termination and so long as such representation is not prohibited by applicable rules of professional conduct, complete its representation in connection with all Cases which remain open at the end of such 30-day period, and (ii) either Party may terminate this Agreement immediately to the extent necessary to comply with applicable professional and/or ethical rules

and regulations or if a party has breached any provision of this Agreement and such breach is not cured following ten (10) day written notice. Upon any termination of this Agreement, Partner shall no longer be a Partner of the Firm and shall immediately cease and desist from suggesting, either on letterhead or elsewhere, any affiliation with Firm. In addition, Partner shall, to the extent reasonably practicable, provide at least 20 days' prior, written notice to Firm prior to filing any papers with the court to withdraw Firm from a particular Case as permitted herein. In the event either Party for any reason terminates this Agreement, Partner shall be entitled to all Earned Fees for work performed up to the date of termination and no other fees, except as provided in Section 5. Notwithstanding the foregoing, Firm shall also be entitled, at any time and in its sole discretion, to suspend Partner's status as a non-voting, non-equity Partner of Firm if Firm believes such suspension is necessary for any reason. Upon Termination, the Parties anticipate that Clients shall remain Clients of Firm and that Partner will take no actions to interfere with Firm's relationships with its Clients. Nothing herein shall interfere with Partner's right to notify Clients that Partner is no longer associated with Firm, inform Clients of the location Clients can contact Partner and provide other communications to Clients to meet Partner's obligations under local rules of professional conduct. During such communications, Partner shall refrain from soliciting Client to work directly with Partner or otherwise taking any action that is intended to interfere with Firm's relationship with Client. Partner understands and agrees that Firm has invested significant expense in marketing to, retaining and representing Clients, and Firm has further incurred great expense in systems, equipment, process and infrastructure, the cost of which is apportioned across every legal matter. Partner acknowledges that in many circumstances, Firm charges a flat fee for services and does not track its time. In consideration of Firm's costs and expenses, from which Partner benefitted, and the difficulty in apportioning fees based on time, Partner agrees that should any Client of Firm terminate Client's representation by Firm in order to work directly with Partner, Partner shall compensate Firm such that Firm receives no less than seventy percent (70%) of the gross fee collected on the case, whether such fees are paid directly to Firm or paid directly to Partner.

**9. Case Management.** In the event that a Client receives a negative result on a Case, the Partner and the Firm will again review the Case to determine whether or not to provide further legal representation in the form of an appeal of the decision, or otherwise. Similarly, if a separate legal action becomes necessary in connection with litigating a Case, Firm will have the right to determine whether to provide the legal representation in the ancillary case or cases. Finally, if it is subsequently decided by Firm that additional counsel should be brought into a particular Case to assist in the



representation of a Client, this Agreement will be revised to reflect any new arrangements that are negotiated by Firm, including potentially reducing Partners share of fees.

**10.  Malpractice Insurance, other costs.** To the extent Firm is required to procure, or at its election, procures malpractice insurance for Partner covering all services provided by Partner on behalf of the Firm during the term of this Agreement, Firm shall, from time to time, deduct from any Fees due and owing to Partner by Firm, an amount equal to the amount advanced by Firm to subsidize the cost of Partner's malpractice coverage.  Partner shall be entitled to no distributions or other Fee payments until Firm has been fully reimbursed for such expense.  Partner shall be under an affirmative obligation to report to Firm any and all ethics complaints, professional liability claims or other matters that could directly or indirectly affect the Firm whether or not related to Partners activities within Firm, or on behalf of Firm's clients.  Such obligation to notify Firm shall be triggered by Partner's receipt of any notification of any type, whether in the form of an informal verbal or written notification or as a matter filed before a court.  Additionally, to the extent Firm incurs additional administrative and/or software licensing fees specifically necessitated to facilitate Partner participating as a Partner in the Firm, such as telephony and document preparation software, Firm reserves the right, from time to time, to deduct from any Fees due and owing to Partner by Firm, up to an amount equal to the amount advanced by Firm to subsidize the cost of such software fees attributable to Partner.

**11. Licensure and Standards.**  Partner confirms to Firm that he/she is licensed in good standing to practice law in the State(s) of Partner's admission, and that you have never been subject to any disciplinary or ethics complaints or proceedings and no such complaints or actions are pending. Partner agrees to provide the services to Clients with the requisite diligence and skill and in compliance with applicable laws, rules of professional responsibility and other professional standards.  Partner further agrees to comply with all Firm policies and/or guidelines in effect from time to time.

**12.  No Conflict.** Partner confirms that he/she has no contractual agreement or other obligation that will conflict with or are breached by Partner's execution or performance of this Agreement.

**13.  Outside Interests; Professional Liability Insurance; Indemnification.**

(a)  The Firm understands and acknowledges that while you are a Partner of the Firm you may be a Partner of Other Firms or may engage in other outside interests (collectively "Outside Interests"), including the practice of law or engaging in other lawful business activities, either in your individual capacity or on behalf of or through another firm or entity, and provided that such Outside Interests (i) are not conducted under the name of the Firm or a similar name; (ii) do not create a conflict of interest for the

Firm or result in a violation of any ethical rule; or (iii) do not adversely affect the operations of the Firm.

(b) Partner represents that he/she has made, and will make, as and when requested, full and complete written disclosure to the Firm describing all Outside Interests. Partner further agrees to notify the Firm promptly of any claim asserted against him/her or any grievance or other disciplinary action brought against Partner with respect to the Outside Interests or the Firm.

(c) Partner further agrees to notify the Firm promptly of any claim asserted against him/her or any grievance or other disciplinary action brought against Partner with respect to the Outside Interests or the Firm. Partner agrees to indemnify the Firm and hold the Firm harmless from and against any and all claims, damages or liabilities, including without limitation all costs and expenses (including reasonable attorneys fees), arising from or out of or related to his/her practice of law prior to your joining the Firm or arising out of or related to any Outside Interests, including without limitation legal services performed, matters handled or acts or omissions taken or made outside the Firm's practice. Without limiting the generality of the foregoing, Partner agrees that, if any claim arises out of Partner's practice of law prior to joining the Firm or out of the Outside Interests, including without limitation legal services performed, matters handled or acts or omissions taken or made outside the Firm's practice, the Firm will not be responsible for, and Partner will bear, any deductible amounts under any applicable coverage, whether it is Partner's individual policy, any trailer coverage Partner purchases or the Firm's policy.

**14. Miscellaneous.** The Attorneys agree that the terms and conditions set forth in this Agreement, as well as the fact that the Attorneys have entered into a Partner agreement, constitute confidential information and shall not, except as ordered by a court of competent jurisdiction, be disclosed to any third party. If any provision of this Agreement is held to be unenforceable or invalid for any reason, the remaining provisions will continue in full force and effect with such unenforceable or invalid provision to be changed and interpreted to best accomplish its original intent and objectives. This is the entire agreement of the Attorneys regarding the subject matter herein, and this Agreement shall supersede any prior oral or written agreements regarding such subject matter. Any amendment to this Agreement must be in writing and signed by all of the Attorneys.

**15. Entire Agreement; Amendment:** This Agreement cancels and supersedes all prior written and unwritten agreements and understandings between the parties pertaining to the matters covered in this Agreement. No obligations, agreement or understanding shall be implied from any course of dealing, as all obligations, agreements and understanding with respect to the subject matter hereof are expressly set forth herein. All understandings and agreements, whether written or oral, heretofore had between the parties are merged into this Agreement, which alone fully and completely expresses the parties' total agreement. No

amendment to this Agreement shall be effective unless reduced to writing and signed by both parties.

**16. Venue and Choice of Law:** This Agreement is intended to and shall be governed by the laws of the State of Illinois (without regard to its rules regarding conflicts of laws). Exclusive venue for any applicable state or federal court, or arbitration tribunal, shall lie within Cook County, Illinois.

**17. Arbitration:** Except as provided below, any controversy or claim asserted by the Attorneys, arising out of or relating to this Agreement or the relationship created hereby, or the breach hereof, shall be resolved by binding arbitration in accordance with the rules, then obtaining, of the American Arbitration Association (Commercial Rules), and judgment upon the award rendered may be entered in any court having jurisdiction thereof. For that purpose, the parties hereto consent to the jurisdiction and venue in Cook County, State of Illinois. A Party may bring an action in state or federal court if, and only if, the total damages such party seeks, inclusive of attorneys' fees, interest and demands for special or exemplary damages, do not exceed $10,000.

**18. No Class Action:** Any claim arising from this Agreement or the services offered herewith shall be adjudicated on an individual basis, and shall not be consolidated in any proceeding with any claim or controversy of any other party. In the event of any arbitration or litigation arising out of or relating to this Agreement, the substantially prevailing party in such action shall be entitled to recover all costs and fees including, without limitation, attorneys' fees.

**19. Limitation of Liability and Damages.** In no event will Firm be liable to Partner for any lost profits, special, incidental, exemplary or consequential damages related to this Agreement, whether based on breach of contract, negligence, tort or any other legal theory and regardless of whether such Attorney has been notified of the possibility of such damages. Further, in no event shall the Firm be liable to Partner for an amount exceeding the compensation paid by the Firm to Partner over the last ninety (90) days prior to any alleged liability. This provision of the Agreement may be reasonably interpreted as surviving and continuing in effect after termination of this Agreement.

**20. No Waiver:** The waiver of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

**21. Duplicate Counterparts; Acceptance of Service:** This Agreement may be executed in duplicate counterparts to the extent a hard copy of this Agreement is to be signed, and each such executed counterpart shall be deemed an original. Further, to the extent a hard copy of this Agreement is to be signed, as Firm has provided Partner with a copy of this Agreement, the performance of any Partner services, combined with the payment in full of Partner Fees, will be deemed to constitute acceptance of this Agreement by both

parties, whether or not this Agreement has been signed by either or both parties.

**22. Notice**. All notices required or permitted under this Agreement shall be in writing and shall be deemed received when (a) delivered personally, (b) sent by confirmed facsimile (followed by the actual document via U.S. mail), (c) one (1) day after deposit with a commercial express courier specifying next day delivery, with written verification of receipt, or (d) sent by e-mail. Unless otherwise indicated in writing by either party to the other party, all communications shall be sent to the address set forth for each party on the signature page hereto, or, if this Agreement is signed electronically, (i) for Firm at its principal place of business posted at the UpRightLaw.com Web site from time to time, and (ii) for Partner, at its principal place of business as provided to Firm.

**23. Force Majeure**. Neither party shall be liable for failure or delay in performing its obligations hereunder if such failure or delay is due to a force majeure event or other circumstances beyond its reasonable control, including, without limitation, acts of any governmental body, war, insurrection, sabotage, embargo, fire, flood, labor disturbance, interruption of or delay in transportation, unavailability of third party services, failure of third party software or inability to obtain raw materials, supplies or power used in or equipment needed for provision of the Services.

**24. Partner Interest**: Partner hereby agrees and acknowledges that Partner's status as a Partner does not render Partner an owner or equity holder in Firm. Partner will not be required to make any monetary or other capital contribution to the Firm. Partner's relationship with Firm is created solely and exclusively by this Agreement, and Partner shall not, under any set of circumstances, be deemed to own any interest or have any voting rights within Firm. Partner's rights and obligations hereunder are personal to Partner and shall not be transferable or assignable. Partner acknowledges that the management and governance of the Firm is vested in the Managers and owners of the Firm and that Partner has no right to participate in the management of the Firm. This Partnership Agreement may be modified upon (i) a vote of the Board of Managers to approve such modification, and (ii) upon providing Partner with ten (10) business days written notice of such modification. Such modification shall be deemed as accepted by Partner and incorporated into this Agreement as if fully stated herein on the tenth (10th) business day after notice (the "Modification Effective Date") unless Partner notifies Firm that Partner rejects such modification which shall be considered a Termination Notice by Partner under section 8 of this Agreement. Firm reserves the right to determine how many other attorneys to associate with the Firm either as equity or non-equity Partners and to determine which attorneys shall serve in such capacities.

 ALLEN CHERN LAW

**25. Survival of Certain Provisions:** Sections 5 and 9 through 22 of this Agreement shall survive any termination of this Agreement. Agreed and executed this _18TH_ day of _SEPTEMBER_, 2015.

**Firm**
By: _____
Print Name: Kevin Chern
Title: Managing Partner
UpRight Law
79 W. Monroe Street, 5th Floor
Chicago, IL 60603

**PARTNER**
By: _James Hauser_
Print Name: _James Hauser_
Title: Partner
Main Office Address: _215 E. Waterloo Rd. Suite 17_
_Akron, OH. 44319_